IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

**KAYLA PIMPO,**

          **Plaintiff,**                            **Case No.**

v.                                             **Judge**
                                                     **Magistrate Judge**
**OZARK AUTOMOTIVE**
**DISTRIBUTORS, INC.**
**d/b/a O'REILLY AUTO PARTS,**

                                                 **JURY DEMAND**
          **Defendant.**
_____/

Defendant Ozark Automotive Distributors, Inc., d/b/a O'Reilly Auto Parts ("Ozark") violated the ADAAA when it refused Plaintiff Kayla Pimpo's ("Ms. Pimpo") accommodation requests and retaliated against her by terminating her. Further, Ozark violated the ADAAA and the TDA when it engaged in a pattern of discrimination and created a hostile work environment due to her disability, including harassing phone calls, micromanagement, a campaign to force her employees to write complaints against Ms. Pimpo, and a pattern of retaliatory disciplinary action. Ozark then retaliated against Ms. Pimpo when it terminated her after she made complaints of discrimination. Ozark further discriminated against Ms. Pimpo on the basis of her sex, in violation of Title VII and the Tennessee Human Rights Act. Ms. Pimpo was pretextually terminated for supposedly sharing her system logins with employees. It was department practice for supervisors to share their logins with their employees so the employees could perform their duties. Ms. Pimpo's male counterparts engaged in this practice but were not terminated. Additionally, Ozark interfered with and retaliated against Ms. Pimpo in violation of her FMLA rights when it terminated her while she was eligible for FMLA leave and shortly after she had

1

been approved for intermittent FMLA leave. Lastly, despite knowing of Ms. Pimpo's disability, including anxiety, OCD, and ADHD, Ozark's Loss Prevention Team shut Ms. Pimpo in a room, which required a key for access, for two hours while it interrogated her regarding the use of the logins. This triggered Ms. Pimpo to have a panic attack, after which Ozark still refused to let her leave. Thus, Ms. Pimpo brings claims of discrimination and retaliation under the Americans with Disabilities Act, as amended, the Tennessee Disability Act, the Family Medical Leave Act, Title VII of the Civil Rights Act of 1964, the Tennessee Human Rights Act, and Tennessee common law.

## PARTIES

1. Plaintiff, Kayla Pimpo, ("Plaintiff" or "Ms. Pimpo") is a citizen and resident of Nashville, Davidson County, Tennessee, and a former employee of Defendant.

2. Defendant, Ozark Automotive Distributors, Inc., d/b/a O'Reilly Auto Parts, ("Ozark") is a Missouri Corporation licensed to transact business in Tennessee. Its registered agent for service of process is C T Corporation System, 300 Montvue Road, Knoxville, TN 37919-5546.

3. At all material times, Defendant has been an employer as defined by Title VII of the Civil Rights Act of 1964 and the Tennessee Human Rights Act.

4. At all material times, Defendant has been an employer as defined by the ADA, 42 U.S.C. § 12111.

5. Plaintiff is a qualified individual with a disability under 29 C.F.R. §1630.2(g) and (h)(2).

6. At all material times, Defendant has been an employer as defined by the Tennessee Disability Act, T.C.A. § 8-50-103 ("TDA").

7. At all times material to this action, based on information and belief, Defendant

has employed 50 or more employees for each working day during each of 20 or more calendar workweeks in the previous years and is an "employer" as defined by the FMLA, 29 U.S.C. § 2601.

## JURISDICTION AND VENUE

8. This is an action for unlawful employment practices brought under the Americans with Disabilities Act 42 U.S.C. §§ 12101 *et seq.* ("ADA"), as amended by the ADA Amendments Act of 2008 ("ADAAA") (Counts I - II), the Tennessee Disability Act, T.C.A. § 8-50-103 ("TDA") (Counts III and IV), the Family and Medical Leave Act, 29 U.S.C. § 2601 ("FMLA") (Count V), Title VII of the Civil Rights Act of 1964, (Counts VI and VII), the Tennessee Human Rights Act ("THRA"), T.C.A. § 4-21-101 *et seq.* (Counts VIII and IX), and negligent and intentional infliction of emotional distress (Count X and XI).

9. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(4), and 1367(a). Venue is proper under 28 U.S.C. § 1391.

10. Plaintiff complied with all conditions precedent to the filing of her claims pursuant to 42 U.S.C. § 12101 *et seq.*, and 42 U.S.C. § 2000e *et seq.*, to wit: a charge of discrimination was filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the unlawful employment practice; the EEOC issued Plaintiff a Notice of Right to Sue for the charge and this action was commenced within 90 days of receipt of Notice of Right to Sue.

## FACTS

11. Plaintiff, Kayla Pimpo, was employed by Ozark as a Department Supervisor from August 1, 2021, until her termination on September 12, 2022.

12. Ms. Pimpo is a qualified individual with a disability under 29 C.F.R. §1630.2(h)(2). Ms. Pimpo has mental health disabilities, including anxiety, ADHD, obsessive

3

compulsive disorder, and a panic disorder that requires medication and ongoing treatment. This disability affects her nervous and cardiovascular systems and the major life activities of working and sleeping, among others.

13. As a result of her disability, Ms. Pimpo also suffers from Claustrophobia, a severe fear of confined or enclosed spaces, which also affects her nervous and cardiovascular systems and the major life activities of working and sleeping, among others.

14. In her role as Add On Supervisor, Ms. Pimpo oversaw the Add On employees. Her duties included hiring, firing, approving time for the team members at the end of the day, managing the schedule, delegating work, and managing workflow.

15. Ms. Pimpo's shift was Monday through Friday beginning at 9:00am until 6:30 pm. However, most days she worked until 8:00 or 9:00 pm. Ms. Pimpo would work Saturdays, as needed.

16. Ms. Pimpo was a salaried employee who was not required to clock in or out.

17. If an employee missed clocking in or out but worked that day, Ms. Pimpo would contact the employee to confirm their clock in or out time and fix this in the system. Other supervisors engaged in this practice regularly.

18. In October 2021, Ms. Pimpo requested an accommodation to allow her to arrive at work late every other Tuesday in order to attend Cognitive Behavioral Therapy related to her disability. On these days, Ms. Pimpo would work later than usual to make up for the time she missed in the morning.

19. In Spring 2022, Tracey Ross, Operations Manager, became Ms. Pimpo's supervisor.

20. Ms. Pimpo was the only female supervisor in Ms. Ross' department.

21. Ms. Ross was made aware of Ms. Pimpo's accommodations and requested that Ms. Pimpo begin bringing in additional doctor's notes on the days that she attended therapy.

22. Despite providing doctor's notes for her therapy, Ms. Ross began to write Ms. Pimpo up for being tardy on the days that she had therapy, including on May 11, 2022.

23. Prior to Ms. Ross' employment, on occasions where Ms. Pimpo had a doctor's appointment that required she arrive more than thirty (30) minutes late, Ms. Pimpo would provide a doctor's note and receive approval to arrive late from either Thad Slicker, Area Manager, Charles Dwyer, Warehouse Manager, or Tim Glasgowe, Operations Manager.

24. After Ms. Ross was hired, Ms. Pimpo would also attempt to receive approval for her doctor's appointments from Ms. Ross.

25. On these occasions, Ms. Pimpo would also work later to make up the time missed.

26. On July 8, 2022, Ms. Pimpo met with Ms. Ross and Amy Abraham, Human Resources.

27. In this meeting, Ms. Ross stated that Ms. Pimpo's physician's notes did not matter to her and "if it was up to [Ms. Ross], [Ms. Pimpo] would be unemployed now."

28. Ms. Ross then attempted to revoke Ms. Pimpo's approved accommodated scheduled.

29. Ms. Ross was not present during the morning working hours and because Ms. Pimpo was a salaried employee, she was not required to clock in or out. As such, Ms. Ross would not be privy to Ms. Pimpo's arrival times.

30. During this meeting, Ms. Abraham notified Ms. Pimpo that she could continue with her counseling appointments and her accommodation remained.

31. After this meeting, Ms. Ross began harassing Ms. Pimpo and created a hostile work environment because of Ms. Pimpo's disability and request for accommodation.

32. Upon information and belief, Ms. Ross began contacting members of Ms. Pimpo's team to ask for information that could lead to Ms. Pimpo's termination. This would occur multiple times per week.

33. Ms. Ross additionally began contacting Ms. Pimpo multiple times per day, even during Ms. Pimpo's therapy appointments, about where Ms. Pimpo was on her lunch break, for explanations for any decision Ms. Pimpo was making, and the location of any of Ms. Pimpo's employees.

34. Ms. Ross began to micromanage and question every decision Ms. Pimpo made.

35. Ms. Pimpo's male counterparts did not receive similarly harassing phone calls or treatment.

36. Ms. Pimpo contacted Ms. Abraham about these harassing phone calls and told her about the harassment and how Ms. Ross did not contact any of Ms. Pimpo's male colleagues in this manner.

37. Ms. Abraham dismissed Ms. Pimpo's complaints.

38. Upon information and belief no action was taken as a result of Ms. Pimpo's complaint.

39. Ms. Ross allowed male employees to attend doctor's appointments with no threats or harassment or write ups.

40. Around August 2022, Ms. Pimpo applied for Intermittent FMLA related to her disability and included a request for time off for her therapy sessions.

41. On September 7, 2022, Ms. Pimpo's Intermittent FMLA was approved, allowing

her to attend therapy every other Tuesday from 12:00 pm until 1:00pm.

42. On September 9, 2022, Ms. Ross brought Ms. Pimpo to Tiffany Rochelle, a member of the Loss Prevention Team.

43. Ms. Rochelle shut Plaintiff in a locked room which required a key for entry.

44. Although Ms. Pimpo could exit the room, others could not get in without a key and Ms. Pimpo was told to remain in the room.

45. Ms. Pimpo was shut in this room for two hours during which she was interrogated by members of Ozark's Loss Prevention Team.

46. While kept in this room, Ms. Pimpo suffered a panic attack, which Loss Prevention was aware of.

47. Upon information and belief, another employee, Jessica Stanton, notified Human Resources that Ms. Pimpo had been shut in the room and was experiencing a panic attack.

48. Human Resources took no action.

49. A member of the Loss Prevention Team had to use a key to unlock the door every time she entered.

50. Ms. Pimpo was accused of fixing employees' timesheets in the computer system.

51. Ms. Pimpo did not adjust any employees' time if they clocked in late or early. Ms. Pimpo explained that it was likely another employee utilized her logins.

52. All employees within Ms. Pimpo's department must access the AS 400 system to perform their job duties. However, no hourly employees are provided with their own individual logins.

53. As a result, it is common practice for managers, including Ms. Pimpo's male counterparts, Matt Thornberg and Justin Bramel, to share their AS 400 system logins with their

employees.

54. Mike Warren, the Inbound Operations Manager, also shared his AS 400 logins with employees.

55. On September 12, 2022, Ms. Pimpo was terminated for sharing her login in password with subordinates.

56. Neither of Ms. Pimpo's male counterparts were fired for sharing their login password with their employees.

57. Upon information and belief, Ozark replaced Ms. Pimpo with a male employee who does not have a disability.

58. On September 14, 2022, Ms. Stanton completed an investigation statement detailing that Ms. Ross began targeting and harassing Ms. Pimpo at the beginning of Ms. Ross' employment. Ms. Stanton also stated that Ms. Ross would call individuals to write statements against Ms. Pimpo to get her fired.

59. Ms. Stanton further explained that all managers provided employees with their AS 400 logins, as these systems were necessary for employees to complete their work and not all employees were provided with their own logins.

60. Another employee, Johnny Sengsourinthone, provided Human Resources with a similar statement regarding the use of Ms. Pimpo's logins.

**Count I**
**Violation of ADA/ADAAA- Disability**
**Discrimination**

61. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

62. Pursuant to the ADAAA, an individual is considered to have a disability if she has a mental disorder that substantially limits one or more major life activities, has a record of

such an impairment, or is regarded as having such impairment. Plaintiff was a qualified individual with a disability as she had multiple mental health disorders that affected her nervous and cardiovascular systems and were an impairment that substantially limited him in one or more major life activities.

63. Plaintiff was also regarded as disabled.

64. Plaintiff was subjected to a hostile work environment on the basis of her disability, harassed at work, and terminated because of her disability and/or Defendant's failure to accommodate her disability.

65. Plaintiff could perform the essential functions of her job with an accommodation of being able to arrive at work late or take an hour off every other Tuesday to attend therapy. Plaintiff was able to make up any time she missed for doctor's appointments by staying later in the day to cover her shift's hours.

66. Plaintiff was subjected to a discriminatory hostile work environment, discriminated against, and eventually terminated due to her disability, her engagement in protected activity, and her requests for a reasonable accommodation.

67. Plaintiff's supervisor repeatedly harassed her due to her disability, threatened to terminate her for going to therapy appointments, and tried to force other employees into writing complaints about her to support her termination. This caused Plaintiff to suffer severe physical manifestations of her disability.

68. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

69. As a result, Plaintiff is entitled to recover her damages, including lost wages and

9

Case 3:23-cv-00955    Document 1    Filed 09/07/23    Page 9 of 17 PageID #: 9

benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## Count II
### Violation of ADAAA- Retaliation

70. Plaintiff restates and incorporates herein the foregoing paragraphs.

71. It is federal public policy and law under the Americans with Disabilities Act that employees must be able to exercise their rights without fear of reprisal or penalty from an employer.

72. Plaintiff engaged in protected activity under the ADA when she requested accommodation and complained of discrimination, harassment, and retaliation. Such actions by the Plaintiff are statutorily protected activities under ADAAA.

73. In violation of the ADAAA, Defendant retaliated against Plaintiff when it created a retaliatory hostile work environment as a result of her accommodation requests and ultimately terminated her employment.

74. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

## Count III
### Violation of TDA- Disability Discrimination

75. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

76. Pursuant to the TDA, an individual is considered to have a disability if he or she has a physical or mental impairment that substantially limits one or more major life activities.

77. Plaintiff was a qualified individual with a disability.

78. Defendant discriminated against Plaintiff on the basis of her disability, in

violation of the TDA, that culminated in her termination.

79. Plaintiff was discriminated against and eventually terminated because of her disability and her complaints of a retaliatory hostile work environment.

80. Further, Plaintiff was subjected to a hostile work environment by her supervisor resulting in physical manifestations of her disability.

81. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

82. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

**Count IV**
**Violation of TDA- Retaliation**

83. Plaintiff restates and incorporates herein the foregoing paragraphs.

84. It is the public policy and state law of Tennessee that employees must be able to exercise their rights under state law without fear of reprisal or penalty from an employer.

85. Plaintiff objected to and protested disability discrimination in the workplace. Such actions by the Plaintiff are statutorily protected activities under TDA.

86. In violation of the TDA, Defendant retaliated against Plaintiff by terminating her employment in retaliation for exercising her rights under the TDA.

87. Defendant retaliated against Plaintiff because of her protected activity by taking adverse action against Plaintiff. As a result of Plaintiff's protected activity, i.e. complaints of harassment and disability discrimination, Defendant took adverse employment actions against Plaintiff for a pretextual reason.

88. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

**Count V**
**Violation of FMLA- Interference and Retaliation**

89. Plaintiff restates and incorporates herein the foregoing paragraphs.

90. Defendant interfered with and retaliated against Plaintiff for taking FMLA protected leave.

91. At all times material to this action, Plaintiff was an eligible employee under the FMLA, 29 U.S.C. § 2611(2)(a)(i)(ii).

92. Defendant is an eligible employer under the FMLA, 29 U.S.C. § 2611(4)(A)(i).

93. Plaintiff was entitled to receive FMLA leave to care for her own serious health condition.

94. Defendant interfered with Plaintiff's right to take FMLA leave by terminating her when she was eligible for FMLA leave.

95. Defendant subjected Plaintiff to disparate terms and conditions of employment after she requested and took FMLA, including but not limited to interfering with her FMLA leave, and retaliating against her after she requested and took FMLA leave by terminating her.

96. Defendant's actions constitute interference and/or retaliation violations of the FMLA.

97. Defendant's conduct was a motivating factor in adverse employment actions against Plaintiff.

98. Defendant's conduct harmed and caused damage to Plaintiff.

99. As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, liquidated damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## COUNT VI
### Title VII – Discrimination

90. Plaintiff restates and incorporates herein the allegations in the above paragraphs.

91. Plaintiff had been subjected to a campaign of sex-based discrimination and harassment in Defendant's workplace because of her sex, female.

92. It is a violation of Title VII for employers to discriminate against employees based on sex.

93. Defendant has taken adverse employment actions against Plaintiff, including terminating her. Defendant's actions violate Title VII.

94. Plaintiff has been subjected to a hostile work environment due to her sex. Plaintiff's supervisor continually micromanaged, harassed, and subjected Plaintiff to a hostile work environment, which her male counterparts were not despite engaging in similar practices.

95. Defendants knew or should have known of the discrimination and is vicariously liable for the harassment perpetrated by management and for failing to remedy harassment and discrimination in the workplace.

96. As a direct and proximate result of Defendants' unlawful acts, Plaintiff suffered and continues to suffer emotional and physical injury, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience, lost earnings, attorney's fees, costs, interest and any other legal and equitable relief to which she may be entitled.

## COUNT VII
### Title VII – Retaliation

97. Plaintiff restates and incorporates herein the allegations in the above paragraphs.

98. Plaintiff objected to and protested sex-based discrimination in the workplace. Such actions by the Plaintiff are statutorily protected activities under Title VII.

99. In violation of Title VII, Defendant took adverse employment actions against Plaintiff when it terminated her.

100. Defendant retaliated against Plaintiff because of her protected activity by taking adverse action against Plaintiff and subjecting Plaintiff to a hostile work environment.

101. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

## COUNT VIII
## Sex Discrimination – THRA

102 Plaintiff restates and incorporates herein the allegations in the above paragraphs.

103 Plaintiff had been subjected to a campaign of sex-based discrimination and harassment in Defendant's workplace because of her sex, female.

104 It is a violation of THRA for employers to discriminate against employees based on sex.

105 Defendant has taken adverse employment actions against Plaintiff, including terminating her. Defendant's actions violate Title VII.

106 Plaintiff has been subjected to a hostile work environment due to her sex. Plaintiff's supervisor continually micromanaged, harassed, and subjected Plaintiff to a hostile work environment, which her male counterparts were not despite engaging in similar practices.

107 Defendant knew or should have known of the discrimination and is vicariously liable for the harassment perpetrated by management and for failing to remedy harassment and discrimination in the workplace.

108 As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional and physical injury, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience, lost earnings, attorney's fees, costs, interest and any other legal and equitable relief to which she may be entitled.

## COUNT IX
## Retaliation – THRA

109. Plaintiff restates and incorporates herein the allegations in the above paragraphs.

110. It is the public policy and law of the State of Tennessee that employees must be able to exercise their rights under state and federal discrimination law without fear of reprisal or penalty from an employer.

111. In violation of Title VII, Defendant took adverse employment actions against Plaintiff when it terminated her.

112. Defendant retaliated against Plaintiff because of her protected activity by taking adverse action against Plaintiff and subjecting Plaintiff to a hostile work environment.

113. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

## COUNT X
## Intentional Infliction of Emotional Distress

114. Plaintiff restates and incorporates herein the allegations in the above paragraphs.

115. Defendant engaged in extreme and outrageous conduct toward Plaintiff.

116. The harassing conduct on the basis of Plaintiff's disability should not be tolerated in our society and intended to and did cause serious physical and mental injury.

117. Defendant's harassment of and eventual termination of Plaintiff inflicted severe emotional distress on Plaintiff.

118. Defendant shut Plaintiff in a room, which required a key for access, for two hours with the knowledge that she suffers from Anxiety, OCD, ADHD, and claustrophobia, was at the time experiencing a panic attack, and would not allow her leave.

119. Defendant intended to cause emotional distress or recklessly disregarded whether its conduct would cause emotional distress.

120. Defendant's intentional conduct caused Plaintiff severe emotional distress resulting in damages.

## COUNT XI
### Negligent Infliction of Emotional Distress

121. Plaintiff restates and incorporates herein the allegations in the above paragraphs.

122. Defendant engaged in extreme and outrageous conduct toward Plaintiff. The harassment inflicted on Plaintiff was negligent, reckless, outrageous, not conduct tolerated in our society, and without regard for and did cause serious physical and mental injury.

123. Defendant's conduct inflicted severe emotional distress on Plaintiff.

124. Defendant negligently caused emotional distress or recklessly disregarded whether its conduct would cause emotional distress.

125. Defendant's conduct caused Plaintiff severe emotional distress resulting in damages.

## RELIEF REQUESTED

Plaintiff respectfully requests:

1. A jury trial;

2. Back pay and damages for lost benefits, insurance and reimbursement for medical costs due to the loss of her insurance;

3. Reinstatement and/or front pay;

4. Compensatory damages for embarrassment, humiliation, stress, anxiety, inconvenience, and loss of enjoyment of life;

5. Liquidated damages;

6. Punitive damages;

7. Attorneys' fees and expenses;

8. Prejudgment interest and, if applicable, post-judgment interest; and

9. Such other and further legal or equitable relief to which he may be entitled under the ADAAA, the TDA, Title VII, the THRA, FMLA, and any other statutory or common law.

Respectfully submitted,

*s/ Heather Moore Collins*
Heather Moore Collins (BPR #026099)
Ashley Shoemaker Walter (BPR #037651)
Caroline Drinnon (BPR #037016)
HMC Civil Rights Law PLLC
7000 Executive Center Drive, Suite 320
Brentwood, TN 37027
Phone: (615) 724-1996
Fax: (615) 691-7019
heather@hmccivilrights.com
caroline@hmccivilrights.com
ashley@hmccivilrights.com